## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

ERIC TIPPLE,
          Plaintiff,

    vs.                                    CA 12-147-ML

DOC DR. JOSEPH MAROCCO and
DOC DIRECTOR A. T. WALL,
                Defendants.

### MEMORANDUM AND ORDER

Before the Court is a Complaint (Doc. #1) filed by Plaintiff Eric Tipple ("Plaintiff" or "Tipple"), *pro se*, an inmate at the Adult Correctional Institutions ("ACI"), Cranston, Rhode Island, pursuant to 42 U.S.C. § 1983 and related statutes. Tipple has also filed an Application to Proceed without Prepayment of Fees and Affidavit (Doc. #2) ("Application") as well as a certified copy of his inmate account statement (Doc. #3). Although Tipple has complied with the procedural requirements of 28 U.S.C. § 1915(a), the Court is required to screen the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1916A.

### BACKGROUND AND TRAVEL

The Complaint names as Defendants Dr. Joseph Marocco, a medical director at the Rhode Island Department of Corrections ("DOC"), and A.T. Wall, Director of the DOC (collectively "Defendants"). Both Defendants are sued in their individual and official capacities.

Tipple alleges that Director Wall has a policy regarding the refund of an inmate's "co-pay" for medical services. (Complaint ¶¶ 8, 11.) According to Tipple, per the DOC policy, an inmate cannot ask for a refund of money "improperly" taken from his account after six months of "seizure." (Id. ¶ 8) He claims that he has been seeking the refund of an improper charge of $36.00 for follow-up visits after hand surgery, (id. ¶ 10), and states that he has requested several times that Dr.

Marocco refund the money taken from his account but that Dr. Marocco has not done so, (id. ¶¶ 11-12).[1]  Tipple alleges that Dr. Marocco is responsible for reviewing wrongful charges allegations per Director Wall's policy and that Dr. Marocco has failed in this duty.  (Id. ¶¶ 13-14.)  Tipple further alleges that both Director Wall and Dr. Marocco have violated the Fourteenth Amendment's due process provision, as they have deprived Tipple of property by knowingly taking money from his account without due process for an improper reason.  (Id. ¶¶ 15-18.)  Tipple states that the DOC policy is inadequate as a post-deprivation remedy, as shown by the fact that the money still has not been refunded despite "proof."[2]  (Id. ¶ 19.)

Tipple seeks $1,000 in compensatory damages and $5,000 in punitive damages from each Defendant.  (Id. ¶ 20A-B.)  He additionally seeks the refund of the $36.00.  (Id. ¶ 20C.)  Finally, Tipple asks that the Court order Director Wall to create a new refund policy which would allow due process (i.e., notice and hearing) before money is taken from a prisoner's account.  (Id. ¶¶ 9, 20D.)

## DISCUSSION

I.    Law

A.    Screening under § 1915(e)(2) and § 1915A

In connection with proceedings in forma pauperis, 28 U.S.C. § 1915(e)(2) directs a court to dismiss a case at any time if the court determines that the action, inter alia, fails to state a claim on

---

[1] Tipple states that he shows in his exhibits that his account was improperly charged for follow-up medical visits.  (Complaint ¶ 11.)  However, no exhibits are attached to the Complaint.  (See Complaint, Docket.)  If Tipple is referring to the exhibits attached to his Application and certified copy of his Inmate Statement ("Certified Statement"), these documents, covering the period from July 31, 2011, through February 29, 2012, (see Certified Statement at 1), do not reflect a debit to his account of $36.00.

[2] Although Tipple claims that he has "proof" that he was improperly charged, (Complaint ¶ 12), he has provided no such proof to the Court, see n.1.

which relief may be granted.  28 U.S.C. § 1915(e)(2).[3]  Pursuant to 28 U.S.C. § 1915A, the Court

is required to screen complaints filed by prisoners against a governmental entity, officer, or employee

of such entity and dismiss the complaint, or any portion thereof, for reasons identical those set forth

in § 1915(e)(2).  See 28 U.S.C. § 1915A.[4]

The legal standard for dismissing a complaint for failure to state a claim pursuant to §§

1915(e)(2) and 1915A is identical to that used when ruling on a Rule 12(b)(6) motion.  See Fridman

v. City of New York, 195 F.Supp.2d 534, 538 (S.D.N.Y. 2002); see also Pelumi v. Landry, No. CA

08-107 ML, 2008 WL 2660968, at *2 (D.R.I. June 30, 2008).  "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[3] Section 1915(e)(2) provides that:

(2) Notwithstanding any filing fee, or portion thereof, that may have been paid, the court
shall dismiss the case at any time if the court determines that- -
    (A) the allegation of poverty is untrue; or
    (B) the action or appeal- -
        (I) is frivolous or malicious;
        (ii) fails to state a claim on which relief may be granted; or
        (iii) seeks monetary relief against a defendant who is immune from such
        relief.

28 U.S.C. § 1915(e)(2).

[4] Similarly, § 1915A states in relevant part that:

(a) Screening.- - The court shall review, before docketing, if feasible or, in any event, as
soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks
redress from a governmental entity or officer or employee of a governmental entity.
(b) Grounds for dismissal.- - On review, the court shall identify cognizable claims or
dismiss the complaint, or any portion of the complaint, if the complaint- -
    (1) is frivolous, malicious, or fails to state a claim on which relief may be granted;
    or
    (2) seeks monetary relief from a defendant who is immune from such relief.

....

28 U.S.C. 28 U.S.C. § 1915A.

plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868

(2009)(quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929

(2007)).  In making this determination, the Court must accept Plaintiff's well-pled allegations as true

and construe them in the light most favorable to him.  See Rogan v. Menino, 175 F3d 75, 77 (1st Cir.

1999).  Although the Court must view the pleadings of a *pro se* plaintiff liberally, Estelle v. Gamble,

429 U.S. 97, 106, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Court need not credit bald assertions or

unsupported conclusions, Iqbal, 566 U.S. at 678; Rogan, 175 F.3d at 77.

B.     Legal Standard under § 1983

Section 1983 requires three elements for liability: deprivation of a constitutional or federal

statutory right, a causal connection between the actor and the deprivation, and state action.  Sanchez

v. Pereira-Castillo, 590 F.3d 31, 41 (1st Cir. 2009)(citing 42 U.S.C. § 1983).   Here, assuming that

Defendants were acting under color of state law, Plaintiff's claims are reviewed to determine if they

allege facts indicating that Defendants deprived him of a constitutional or federal statutory right.[5]

II.    Application to Plaintiff's claims

In essence, Plaintiff's Complaint boils down to two claims: that Director Wall and Dr.

Marocco have knowingly and wrongly deprived Plaintiff of property, $36.00 for follow-up medical

visits,  in violation of the Due Process Clause of the Fourteenth Amendment; and that the DOC's

post-deprivation remedy is inadequate because it imposes a six-month time limit for requesting a

refund.  (Complaint ¶¶ 9-11, 17-18.)[6]  "It is clear beyond hope of contradiction that an inmate has

---

[5] It is clear that Defendants are state actors.  Accepting the well-pled facts in Plaintiff's Complaint as true, the Court assumes a causal connection between the state actors and the alleged deprivation.

[6] Plaintiff does not state when his account was charged.  Thus, it is unclear whether his Complaint falls within the three-year statute of limitations for § 1983 actions.  As noted, the Certified Statement for the

a property interest in the balances held in his accounts." Young v. Wall, 642 F.3d 49, 53 (1st Cir.

2011).  It is also well-established that prisoners "enjoy the protection of due process." Hudson v.

Palmer, 468 U.S. 517, 523, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984).  Thus, the question in this case

is "whether [Plaintiff] has suffered a deprivation of property without due process of law." Parratt

v. Taylor, 451 U.S. 527, 537, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), overruled in part on other

grounds by Daniels v. Williams, 474 U.S. 327, 330-31, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986); see

also Logan v. Zimmerman Brush Co., 455 U.S. 422, 428, 102 S.Ct. 1148, 71 L.Ed.2d 265 (1982).

"The fundamental requirement of due process is the opportunity to be heard and it is an

opportunity which must be granted at a meaningful time and in a meaningful manner." Parratt v.

Taylor, 451 U.S. at 540 (internal quotation marks omitted) ; see also id. (noting that "some kind of

hearing is required at some time before a State finally deprives a person of his property interests").

However, the Supreme Court has "rejected the proposition that at a meaningful time and in a

meaningful manner *always* requires the State to provide a hearing prior to the initial deprivation of

property." Id,

Here, Plaintiff is challenging the DOC procedure which deprived him of his property.

(Complaint ¶ 9.)  It is true that the Supreme Court in Logan held that "postdeprivation remedies do

not satisfy due process where a deprivation of property is caused by conduct pursuant to established

state procedure, rather than random and unauthorized action." Hudson, 468 U.S. at 532 (citing

Logan); see also Logan, 455 U.S. at 436 ("[T]he Court's decisions suggest that, absent 'the necessity

of quick action by the State or the impracticality of providing any predeprivation process,' a post-

---

period from July 31, 2011, through February 29, 2012, does not reflect the allegedly improper deduction.
See n.1.

deprivation hearing here would be constitutionally inadequate.") (quoting Parratt, 451 U.S. at 539).

However, the Logan Court also stated that:

> Obviously, nothing we have said entitles every civil litigant to a hearing on the merits in every case. The State may erect reasonable procedural requirements for triggering the right to an adjudication, be they statutes of limitations or, in an appropriate case, filing fees. And the state certainly accords *due* process when it terminates a claim for failure to comply with a reasonable procedural or evidentiary rule. What the Fourteenth Amendment does require, however, is an opportunity ... granted at a meaningful time and in a meaningful manner for [a] hearing appropriate to the nature of the case.

Logan, 455 U.S. at 437 (alterations in original)(internal citations omitted). The Logan Court further noted that "the Court has acknowledged that the timing and nature of the required hearing will depend on appropriate accommodation of the competing interests involved. These include the importance of the private interest and the length or finality of the deprivation, the likelihood of governmental error, and the magnitude of the governmental interests involved." Logan, 455 U.S. at 434 (internal footnote, quotation marks, and citations omitted). However, "'[a]t some point the benefit of an additional safeguard to the individual affected ... and to society in terms of increased assurance that the action is just, may be outweighed by the cost.'" Parratt, 451 U.S. at 542-43 (second alteration in original)(quoting Mathews v. Eldridge, 424 U.S. 319, 348, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976)).

Moreover, Logan is distinguishable from the instant matter. In Logan, the plaintiff was terminated by his employer due to his alleged inability to perform his job duties. Logan, 455 U.S. at 426. The plaintiff filed an employment discrimination complaint with the Illinois Fair Employment Practices Commission (the "Commission"). Id. Because of a state official's failure to comply with a statutorily mandated procedure (for reasons beyond the plaintiff's control), id. at

424, the plaintiff was denied the opportunity to present his discrimination case in a post-deprivation hearing before the Commission, id. at 426-27 and, therefore, had no opportunity to be heard at any time.   In contrast to the plaintiff in Logan, in this case, despite the fact (accepting Tipple's allegations as true) that a total of $36.00 was taken from his account pursuant to the DOC policy, Tipple, a prisoner, was not denied an opportunity to present his case.  The fact that he presumably missed the six-month deadline does not render the DOC's post-deprivation remedy inadequate.  See Logan, 455 U.S. at 437.

Especially in the prison context, the operation of which the Supreme Court has recognized "is at best an extraordinarily difficult undertaking," Wolff v. McDonnell, 418 U.S. 539, 566, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), it would be impractical to offer every inmate a pre-deprivation hearing when a fee is deducted from his or her account, see Parratt, 451 U.S. at 539; see also Hudson, 468 U.S. at 524 (noting that "constraints on inmates ... are justified by the considerations underlying our penal system")(internal quotation marks omitted); Wolff, 418 U.S. at 556 ("Of course ... the fact that prisoners retain rights under the Due Process Clause in no way implies that these rights are not subject to restrictions imposed by the nature of the regime to which they have been lawfully committed."); Tillman v. Lebanon Cnty. Corr. Facility, 221 F.3d 410, 421 n.12 (3d Cir. 2000) ("a prison must have the ability to deduct fees from an inmate's account even when the inmate refuses to grant authorization").

> It is impractical to expect the prison to provide predeprivation proceedings under these circumstances.  As the takings and assessments pass substantive constitutional muster, we only need ask whether the attendant procedure is also constitutionally adequate.  It is.  The assessments and takings pursuant to the program involve routine matters of accounting, with a low risk of error.  To the extent that mistakes such as erroneous assessments or incorrect takings might occur, they may be corrected through the prison's grievance program without any undue burden on a prisoner['s]

7

rights.   On the other hand, to require predeprivation proceedings for what are essentially ministerial matters would significantly increase transaction costs ....

Tillman, 221 F.3d at 422; see also id. at 421 n.12 (observing that since Logan,  Supreme Court has noted in an *ex parte* forfeiture case, *i.e.,* one that involved established state procedures, that "in 'extraordinary situations,' predeprivation notice and hearings are unnecessary"); id. (concluding that a case arising in a prison context, such as Tillman, presented such an "extraordinary situation").

Here, Tipple concedes that the DOC offered him a post-deprivation remedy.  (Complaint ¶¶ 8-9.)  He does not allege that the policy was unavailable to him.  Although Tipple states that he asked Dr. Marocco repeatedly to refund the improper charge, (id. ¶¶ 11-14), it is not clear whether Tipple did so pursuant to the policy.  Nor is it clear why Tipple did not comply with the six-month deadline; he offers no explanation.  What is clear is that Tipple was afforded an opportunity, pursuant to the policy, to be heard regarding the allegedly improper charge to his account.

CONCLUSION

Based on the foregoing, the Court concludes that Plaintiff has not stated a procedural due process violation.  See Parratt, 451 U.S. at 544 ("Although the state remedies may not provide the respondent with all the relief which may have available if he could have proceeded under § 1983, that does not mean that the state remedies are not adequate to satisfy the requirements of due process. The remedies provided could have fully compensated the respondent for the property loss he suffered, and we hold that they are sufficient to satisfy the requirements of due process." ); Tillman, 221 F.3d at 422 ("In sum, the plaintiff had an adequate postdeprivation remedy in the grievance program.").  Thus, he has not alleged a constitutional claim that is "plausible on its face." Iqbal, 556 U.S. at 678.  Accordingly, Plaintiff's Complaint is DISMISSED.  His Application to proceed *in*

*forma pauperis* is DENIED as moot.


SO  ORDERED:


/s/ Mary M. Lisi
Mary M. Lisi
Chief United States District Judge

DATE: October 22, 2012